Joe Thomas **DAILEY**,
Plaintiff–Appellant,

v.

**SOUTHERN HEEL COMPANY, Vulcan Corporation, Wausau Insurance Company, Defendants–Appellants,**

and

**Director of Workers Compensation For the State of Tennessee Trustee of the Second Injury Fund, Defendant–Appellee.**

Supreme Court of Tennessee,
at Nashville.

Feb. 20, 1990.

Helen Sfikas Rogers, Nashville, for plaintiff-appellant.

Luther E. Cantrell, Jr., Nashville, for defendants-appellants.

W.J. Michael Cody, Atty. Gen. and Reporter, Diane Stamey, Asst. Atty. Gen., Nashville, for defendant-appellee.

## OPINION

FONES, Justice.

This is a workers' compensation case in which the employer was found liable for the sixty percent permanent partial impairment to the employee's left leg and the Second Injury Fund was found liable for the remainder of the award up to the maximum amount of $54,400. We affirm.

Plaintiff, Joe Thomas Dailey, worked for Defendant Southern Heel Company (hereinafter "Southern Heel") for twenty years. Before this employment, Plaintiff had several jobs. He farmed, cut timber, operated dozers and drove a truck. He had an eighth grade education and was sixty-two years old at the time of the trial.

At Southern Heel, Plaintiff's employment consisted of making plastic shoe heels with machines. He was required to carry the material used in the machines up a flight of stairs. The material was carried in buckets and weighed fifty pounds.

On 3 March 1983, Plaintiff slipped and fell at work. He injured his left knee by falling on his kneecap and mashing it "back against the end of his thigh bone." He had surgery on 18 May 1983, and the surgeons shaved his kneecap and removed membrane and cartilage. He has not worked since the accident because the leg has caused many problems. There has been stiffness and pain, and the leg has been "giving out" on him. In fact, Plaintiff has been using a cane. His orthopedic surgeon has prohibited climbing, squatting, kneeling and carrying heavy boxes. The restrictions also prohibit activity that requires Plaintiff to be on his feet. The orthopedic surgeon testified, however, that Plaintiff could physically perform a sedentary job. The surgeon gave the injury a twenty percent permanent partial disability rating to the lower left extremity. Also, Plaintiff was denied rehabilitation from the State due to his age.

Prior to this injury, Plaintiff had several serious injuries. In the 1960's he had back surgery. In 1970, Plaintiff's right kneecap was removed. In 1971, the small finger on his right hand was cut off. In 1975, a finger on his left hand was squeezed by a press. These injuries were all work related, and the first two resulted in permanent disabilities. In addition, a finger on Plaintiff's left hand was surgically removed due to an accident at home in 1964.

Southern Heel paid 50⁵/₇ weeks of temporary total benefits and paid for some medical expenses for the injury in this case before Plaintiff filed suit under the Workers' Compensation Act on 21 June 1984.

The original complaint named as defendants, plaintiff's employer Southern Heel and its parent corporation Vulcan Corporation and the workers compensation insurance carrier Wausau Insurance Company. On 21 December 1984, Plaintiff filed an amended complaint naming an additional defendant, the Director of Workers Compensation of the Tennessee Department of Labor, and alleging a cause of action against the "second injury fund" based upon prior injuries in combination with the current injury to his left leg producing permanent total disability. On the same day, an order allowing the amendment and ordering the issuance of a summons was entered.

On 28 December 1984, the trial court entered an order wherein it was recited that the plaintiff, the employer and its insurance carrier had entered into a settlement of Plaintiff's workers' compensation claim for the sum of $10,474.40, in addition to medical expense and 50⅜ weeks of temporary total disability benefits theretofore paid. The order further states that the court found the settlement to be fair to the plaintiff and in substantial compliance with the act and approved same as a final settlement between the parties before the court. The order also contained a paragraph specifically reserving Plaintiff's cause of action against the "second injury fund."

Thereafter, Sue Ann Head, Director of the Workers' Compensation Division (hereinafter "Director") filed an answer and a motion to dismiss, the material portion of which alleged that at the time of the court-approved settlement, 28 December 1984, she had not been served with process and the "second injury fund" was not a party to the lawsuit as required by Tenn.Code Ann. § 50–6–206. The Director asserted that Plaintiff's failure to comply with the statute in seeking court approval of the settlement barred any further proceedings against the "second injury fund."

Plaintiff responded by filing numerous affidavits wherein Plaintiff attempted to establish that "actual notice" had been given the Director prior to 28 December 1984 and, implicitly, that the giving of "actual notice" was sanctioned by the trial court as all that was necessary prior to proceeding with the settlement hearing on 28 December 1984. The Director responded with affidavits contesting the "actual notice" issue.

On 3 September 1985, the chancellor filed an opinion containing lengthy findings on the "actual notice" issue and concluded by setting aside the order approving the settlement entered on 28 December 1984. He found that on that date the parties before the court misrepresented to the court that

the "amended complaint had been delivered and the Director saw no cause to appear."

Plaintiff and his employer filed motions to reconsider supported by affidavits, stating that certain facts upon which the Chancellor had predicated his conclusion to set aside the settlement were incorrect. On 27 February 1986, the Chancellor entered an order setting aside the 28 December 1984 settlement in accord with his 3 September 1985 opinion.

■ The "actual notice" issue upon which the parties and the court devoted more than a year of time and effort was irrelevant. The "second injury fund" was not a party to the lawsuit on 28 December 1984, because the Director had not been served with a summons [1] by anyone authorized to serve a summons, no return had been made, and time for answering had not expired. The statute that authorizes court approved settlements mandates that if a claim against the "second injury fund" is involved it must be a party at the time of the settlement. Tenn Code Ann. § 50–6–206. *See also Travelers Insurance Co. v. Austin,* 521 S.W.2d 783, 786 (Tenn. 1975). It is true that the statute does not explicitly provide a sanction for failure to make the Director a party prior to the settlement but we hold that it was the obvious and inescapable intention of the legislature in mandating the party status of the "second injury fund" that it be a party with notice of any hearing for court approval of any settlement involving potential liability of that fund. Thus, absent party status and notice, the settlement is voidable at the option of the Director.

On the other hand, there is no merit to the Director's position that because Plaintiff and the employer and its insurance carrier proceeded to seek and did obtain a court approved settlement that the "second injury fund" is relieved of liability. The chancellor correctly set aside the settlement order and tried the issues of the

---

**1.** The record brought to this Court does not contain a summons issued to the Director. Affidavits filed on behalf of plaintiff indicate that a summons was filed in Robertson County on 21 December 1984 but had not been forwarded to Davidson County for service on the Director until 15 January 1985 or later. Thus, in this court the "second injury fund" was not a party in this lawsuit until it made an appearance by filing an answer and a motion to dismiss.

employer's liability for the leg injury and the "second injury fund's" liability for Plaintiff's overall disability, considering his prior injuries and his last work injury to his leg while employed by Southern Heel. The trial resulted in a decree finding the employer and insurance carrier liable for a 60 percent permanent partial impairment of Plaintiff's left leg, a total of 120 weeks at a weekly rate of $130.93. The employer, however, had already paid 80 weeks compensation and was ordered to pay the additional 40 weeks, totaling $5,237.20.

That decree was entered 17 November 1987. It was silent as to the liability or non-liability of the "second injury fund", although it was recited in the preamble of the decree that the third issue to be decided was the amount of liability of the "second injury fund", if any.

Nevertheless, oblivious to that omission, Plaintiff, Southern Heel and Wausau appealed from that decree. This Court remanded the case to the trial court because the decree appealed from failed to adjudicate all the claims of the parties and thus was not a final decree.

On remand, the trial court affirmed the liability of Southern Heel and Wausau as provided in the 17 November 1987 decree, found plaintiff to be "permanently and totally disabled", and ordered the "second injury fund" to pay compensation equal to the difference between the total liability of the employer (50⁵/₇ weeks temporary total and 120 weeks permanent partial) and the maximum statutory limitation in effect on the date of Plaintiff's injury, ($54,400). *See Smith v. Liberty Mutual Ins. Co.,* 762 S.W.2d 883 (Tenn.1988).

■ Southern Heel, Wausau and the Director assert that the trial court erred in setting aside the December 1984 settlement without requiring plaintiff to tender into court the sum of $10,474.40, which is the amount paid to Plaintiff at that time. They rely upon cases in which this Court has held that a plaintiff who seeks to set aside a voluntary workers' compensation settlement must tender the benefits paid by the employer as a condition precedent to rescinding the settlement. *See, e.g., Wooley*

*v. Gould, Inc.,* 654 S.W.2d 669 (Tenn.1983) and *Lindsey v. Hunt,* 215 Tenn. 406, 384 S.W.2d 441 (1964). The rationale for that requirement is found in the substantive law of rescission of contracts. In all of the workers compensation cases that have applied that principle, the employee was dissatisfied with the settlement and alleged a ground urged to be adequate for voiding the settlement. Here, Plaintiff did not seek to set aside or void the settlement, but to the contrary, he insisted that the settlement was valid. The Director was the moving party in urging the necessity of setting aside the settlement that was shown to be in violation of the mandate of Tenn.Code Ann. § 50-6-206.

After the settlement was set aside by the trial court, the employer continued to insist that Plaintiff be required to tender back the sum paid in the December 1984 settlement. On 15 January 1987, the Chancellor entered an order finding it unlikely that Plaintiff could tender the sum of $10,474, but that the employer was entitled to relief. He ordered Plaintiff to provide a $10,500 surety bond, conditioned upon repaying the employer any sum that might be due as a result of the trial on the merits of the issue of Plaintiff's disability for which the employer was admittedly responsible. The employer continued to rely on the position that the December 1984 settlement was valid. On the trial date in September 1987, the employer again moved to be dismissed from the case on the grounds that the settlement was valid regardless of whether the "second injury fund" was a party at that time and that it followed that there was no issue remaining in the case involving the employer.

There existed no legal basis whatever for requiring Plaintiff to tender the settlement sum because Plaintiff did not seek to set it aside. There was also no equitable basis for the employer to continue to insist upon the validity of the settlement. We hold that the employer must reimburse Plaintiff for all expenses incurred in providing the $10,500 surety bond which was filed on 17 March 1987.

■ The Director insists that Plaintiff is not totally and permanently disabled. Our

review of the chancellor's findings of fact is limited by the material evidence rule since this cause of action arose prior to 1 July 1985. *See Alley v. Consolidation Coal Co.*, 699 S.W.2d 147, 148 (Tenn.1985). Thus, the chancellor's findings that Plaintiff suffered a sixty percent permanent partial disability to his left leg and that he is totally and permanently disabled must be affirmed if there is any material evidence to support them.

The medical testimony at trial indicated that Plaintiff had a twenty percent permanent partial medical disability to his left leg. Also, Plaintiff was prohibited from climbing, squatting, kneeling, carrying heavy boxes, and being on his feet. When considering Plaintiff's prior permanent injuries, the orthopedic surgeon testified that he had a thirty-five percent permanent partial medical disability to the body as a whole. We find ample material evidence to support the awards adjudged by the trial court.

The awards made by the trial court are affirmed. This case is remanded to the trial court for a determination of Plaintiff's expenses in providing the surety bond and the entry and enforcement of a decree consistent with this opinion. Costs are adjudged one-half against Southern Heel and Wausau and one-half against the Director.

DROWOTA, C.J., and HARBISON, COOPER and O'BRIEN, JJ., concur.