

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 22, 2017 Session

## DAVID R. SMITH v. THE TENNESSEE NATIONAL GUARD

### Direct Appeal from the Circuit Court for Davidson County
No. 16C-12      Thomas W. Brothers, Judge

### No. M2016-01109-COA-R3-CV

This case involves a military service member's claim against the Tennessee National Guard pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 *et seq*., and Tennessee Code Annotated section 29-20-208. The trial court dismissed the complaint for failure to state a claim. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., joined, and W. NEAL MCBRAYER, J., dissented.

Phillip Leon Davidson, Brentwood, Tennessee, for the appellant, David R. Smith.

Herbert H. Slatery III, Attorney General and Reporter, Andrée Blumstein, Solicitor General, and Taylor William Jenkins, Assistant Attorney General, Nashville, Tennessee, for the appellee, The Tennessee National Guard.

## OPINION

### I. FACTS & PROCEDURAL HISTORY

This is the third appeal before this Court involving these parties. According to the complaint, Plaintiff David Smith is a former lieutenant-colonel in the Tennessee National Guard. For a period, Smith left the Tennessee National Guard to attend the Naval War College on an active duty tour. In 2011, Smith sought to return to the Tennessee National Guard but was allegedly only offered a traditional guardsman's position. Smith "separated from" the Tennessee National Guard on July 10, 2011.

Smith filed a lawsuit in the circuit court of Davidson County pursuant to the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 *et seq.* ("USERRA"), which forbids employment discrimination on the basis of membership in the armed forces. "USERRA creates a private cause of action in favor of a service-connected employee who the employer has refused to rehire." *Smith v. Tenn. Nat. Guard*, 387 S.W.3d 570, 574 (Tenn. Ct. App. 2012) ("*Smith I*"). The trial court dismissed the lawsuit for lack of subject matter jurisdiction on the basis of sovereign immunity, and this Court affirmed. *Id.* at 572. We explained that USERRA performs several key functions:

> (1) it guarantees returning veterans a right of re-employment after military service, 38 U.S.C. § 4312; (2) it prescribes the position to which such veterans are entitled upon their return, 38 U.S.C. § 4313; (3) it prevents employers from discriminating against returning veterans on account of their military service, 38 U.S.C. § 4311; and (4) it prevents employers from firing without cause any returning veterans within one year of reemployment, 38 U.S.C. § 4316.

*Id.* at 574 (footnote omitted). However, for actions filed by individuals *against a state* as an employer, USERRA provides that "the action may be brought in a State court of competent jurisdiction *in accordance with the laws of the State*." 38 U.S.C. § 4323(b)(2) (emphasis added). In other words, "for an individual to sustain an action against a state pursuant to USERRA, the action must be permitted by state law." *Smith I*, 387 S.W.3d at 574.

The Tennessee National Guard is a division of the Tennessee Military Department and "an entity of the State of Tennessee." *Id.* at 576 (citing Tenn. Code Ann. § 58-1-201). Article I, section 17, of the Tennessee Constitution provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." As a result, "no civil action against the State may be sustained absent express authorization from the Tennessee General Assembly." *Smith I*, 387 S.W.3d at 575. Because the Tennessee General Assembly had not expressly waived the State's sovereign immunity for claims under USERRA, we concluded that the Tennessee National Guard was immune from USERRA claims and affirmed dismissal of Smith's claim. *Id.* at 576.

Shortly after we issued that opinion, effective July 1, 2014, the Tennessee General Assembly adopted Tennessee Code Annotated section 29-20-208, entitled "Uniformed Services Employment and Reemployment Rights Act of 1994," which provides:

> Immunity from suit of any governmental entity, or any agency, authority, board, branch, commission, division, entity, subdivision, or department of

2

state government, or any autonomous state agency, authority, board, commission, council, department, office, or institution of higher education, is removed for the purpose of claims against and relief from a governmental entity under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301-4334.

*See* 2014 Tenn. Pub. Acts, c. 574. Relying on the new statute, Smith filed a Rule 60 motion seeking to have his original lawsuit reinstated. The trial court denied the Rule 60 motion, finding that Smith's claim was still barred by sovereign immunity because it accrued prior to July 1, 2014. On appeal, this Court affirmed the trial court's decision. *Smith v. Tenn. Nat'l Guard*, No. M2014-02375-COA-R3-CV, 2015 WL 3455448, at *2 (Tenn. Ct. App. May 29, 2015), *perm. app. denied* (Tenn. Sept. 17, 2015) ("*Smith II*"). We acknowledged the passage of Tennessee Code Annotated section 29-20-208 but also recognized that the public act provided that it was to take effect on July 1, 2014, and "'apply to all claims against a governmental entity under [USERRA] *accruing on or after such date.*'" *Id.* (quoting 2014 Tenn. Pub. Acts, c. 574, § 2) (emphasis added). We rejected Smith's argument that his cause of action did not accrue before July 1, 2014. Citing the discovery rule, we explained that "a cause of action accrues when the plaintiff knows or, in the exercise of reasonable care and diligence, should have known that an injury has been sustained as the result of wrongful conduct by the defendant." *Id.* at *3. We concluded that Smith was aware that he had suffered an injury as a result of the Tennessee National Guard's conduct by the time he filed his original complaint in 2011, and therefore, his cause of action accrued in 2011, prior to July 1, 2014, and was barred by the doctrine of sovereign immunity. *Id.*

On January 4, 2016, Smith initiated the case before us by filing a new complaint in the circuit court for Davidson County. He asserted, again, that the Tennessee National Guard's failure to rehire him in 2011 violated USERRA and Tennessee Code Annotated section 29-20-208. Smith also asserted that Tennessee Code Annotated section 29-20-208 is unconstitutional because it allegedly violates the Supremacy Clause and conflicts with USERRA by applying "a statute of limitations" to USERRA claims.

The Tennessee National Guard filed a motion to dismiss. First, it argued that the case should be dismissed based on res judicata. Alternatively, it argued that the case should be dismissed for lack of subject matter jurisdiction based on sovereign immunity, claiming that Smith's USERRA cause of action accrued in 2011. It also denied that Tennessee Code Annotated section 29-20-208 contained a statute of limitations or violated the Supremacy Clause.

Smith filed a response, arguing that the present suit was not barred by res judicata because his previous case was dismissed for lack of subject matter jurisdiction rather than

resolved on the merits. Smith also argued that his cause of action did not accrue in 2011 because he had no "right to sue" at that time. He suggested that his "right to sue" did not exist, and his USERRA claim did not accrue, until July 1, 2014, when section 29-20-208 became effective. He also maintained that section 29-20-208 is unconstitutional because it contains what he described as a time limit on filing a USERRA claim.

On April 28, 2016, the circuit court entered an order granting the Tennessee National Guard's motion to dismiss. The trial court found that res judicata was inapplicable and did not bar this lawsuit. However, the court again concluded that Smith's cause of action accrued before July 1, 2014, and therefore, his claim was subject to dismissal. The trial court also found that Tennessee Code Annotated section 29-20-208 is constitutional. Smith timely filed a notice of appeal.

## II. ISSUES PRESENTED

Smith presents the following issues, as slightly reworded, for review on appeal:

1.     Whether the trial court erred in holding that Tennessee Code Annotated section 29-20-208 is constitutional; and

2.     Whether the trial court erred in holding that Smith's cause of action accrued prior to July 1, 2014.

For the following reasons, we reverse and remand for further proceedings.

## III. DISCUSSION
### A.     Constitutionality

At the outset, we address Smith's contention that Tennessee Code Annotated section 29-20-208 is unconstitutional. Specifically, Smith argues that section 29-20-208 sets an impermissible time limit on USERRA claims and is therefore unconstitutional in violation of the Supremacy Clause. He argues that Congress intended USERRA to "cover the field" in the area of protecting service members' employment rights. Smith claims that section 29-20-208 conflicts with and is preempted by the following USERRA provision:

> (b) Inapplicability of statutes of limitations. -- If any person seeks to file a complaint or claim with the Secretary, the Merit Systems Protection Board, or a Federal or State court under this chapter alleging a violation of this chapter, there shall be no limit on the period for filing the complaint or claim.

4

38 U.S.C. § 4327(b).

"[T]he doctrine of preemption is rooted in the Supremacy Clause of the United States Constitution." *Berent v. CMH Homes, Inc.*, 466 S.W.3d 740, 748 (Tenn. 2015). "As 'the supreme law of the land,' federal law sometimes preempts, or supplants, otherwise permissible state laws, rendering them inert and ineffectual." *Id.* (citing *Morgan Keegan & Co. v. Smythe*, 401 S.W.3d 595, 605 (Tenn. 2013)).

The doctrine of field preemption applies "when a state attempts to regulate conduct 'in a field that Congress intends the federal government to occupy exclusively.'" *Cadence Bank, N.A. v. The Alpha Trust*, 473 S.W.3d 756, 765 (Tenn. Ct. App. 2015) (quoting *Coker v. Purdue Pharma Co.*, No. W2005-02525-COA-R3-CV, 2006 WL 3438082, at *5 n.8 (Tenn. Ct. App. Nov. 30, 2006)). "Field preemption occurs when federal regulation of a field is 'so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Lake v. Memphis Landsmen, LLC*, 405 S.W.3d 47, 56 (Tenn. 2013) (quoting *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 854 (Tenn. 2010)). We do not draw that inference here. USERRA expressly provides that an individual's USERRA action against a State employer may be brought in state court "in accordance with the laws of the State." 38 U.S.C.A. § 4323(b)(2).

Additionally, a state law may be preempted under the doctrine of conflict preemption to the extent that the state law actually conflicts with federal law and "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Berent*, 466 S.W.3d at 748 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 477 (1989)). However, we discern no actual conflict between the aforementioned USERRA provision and Tennessee Code Annotated section 29-20-208. The USERRA provision prohibits placing a "limit on the *period for filing* the complaint or claim." 38 U.S.C. § 4327(b) (emphasis added). Pursuant to section 29-20-208, sovereign immunity is waived in Tennessee for "claims against a governmental entity under [USERRA] accruing on or after" July 1, 2014. 2014 Tenn. Pub. Acts 574, § 2. This language does not place an impermissible limit on "the period for filing" such a claim when immunity is removed. *See* 38 U.S.C. § 4327(b). Therefore, it does not conflict with USERRA. We agree with the trial court's finding that Tennessee Code Annotated section 29-20-208 does not violate the Supremacy Clause.

## B.   *Accrual*

5

Next, we consider Smith's argument that the trial court erred in concluding that his USERRA claim accrued in 2011. We note that in our second *Smith* opinion, involving Smith's Rule 60 motion, we concluded that his claim accrued in 2011 because he had knowledge of it by that time. *Smith II*, 2015 WL 3455448, at *3. However, the parties raise no issue on appeal regarding the applicability of res judicata or collateral estoppel. Therefore, we consider the accrual issue anew.

In this appeal, Smith raises an issue that this Court did not expressly analyze in our previous opinion. He argues that his USERRA claim did not accrue in 2011 because he had no legally recognized "right to sue" and no judicial remedy prior to the passage of Tennessee Code Annotated section 29-20-208. He contends that his right to sue the Tennessee National Guard pursuant to USERRA did not exist under Tennessee law until July 1, 2014, and therefore his USERRA cause of action did not accrue until that date.

We note at the outset that the Tennessee General Assembly was authorized to waive sovereign immunity with regard to past events. *See Morris v. State*, No. M1999-02714-COA-RM-CV, 2002 WL 31247079, at *4 (Tenn. Ct. App. Oct. 8, 2002) ("A state may enact laws waiving or impairing its own rights, and may even impose on itself new liabilities with respect to transactions already past.") (citations omitted). The general assembly was also authorized to determine the effective date of its Act. *Id.* at *4 n.10 (citing Tenn. Const. art. II, § 20). We therefore focus on the particular language used by the general assembly.[1]

Tennessee Code Annotated section 29-20-208 applies "to all claims against a governmental entity under [USERRA] *accruing* on or after [July 1, 2014]." 2014 Tenn. Pub. Acts 574, § 2 (emphasis added). Neither the statute nor the public act defines how to measure the concept of accrual for purposes of section 29-20-208. Generally, the concept of accrual relates to the date on which a statute of limitations begins to run. *Redwing v. Catholic Bishop for Diocese of Memphis*, 363 S.W.3d 436, 457 (Tenn. 2012). Under the traditional accrual rule, "a cause of action accrues and the applicable statute of limitations begins to run 'when the plaintiff has a cause of action and the right to sue.'" *Id.* (quoting *Armistead v. Clarksville-Montgomery Cnty. Sch. Sys.*, 437 S.W.2d 527, 528-29 (Tenn. 1969)). Historically, the statute of limitations began to run even though the person entitled to an action had no knowledge of his right to sue or the facts out of which the right arose. *Id.* Today, by adoption of the "discovery rule," a cause of action accrues "when the plaintiff knows, or in the exercise of reasonable care and diligence should

---

[1]For instance, *Morris* involved a waiver of sovereign immunity for retaliatory discharge claims, and the public act stated that it would apply "to all cases *filed* with the Claims Commission *on or after* July 1, 1992, pending on appeal at the time of passage of this act." 2002 WL 31247079, at *2 (citing Act of Mar. 22, 1999, ch. 54, § 2, 1999 Tenn. Pub. Acts 110, 110) (emphasis added).

know, that an injury has been sustained." *Wyatt v. A-Best, Co.*, 910 S.W.2d 851, 854 (Tenn. 1995). "*Additionally*," though, "a cause of action in tort does not accrue until a judicial remedy is available." *Id.* at 855 (emphasis added).

Tennessee courts have consistently held that a cause of action in tort does not accrue or exist "until a judicial remedy is available" to the plaintiff. *Terry v. Niblack*, 979 S.W.2d 583, 586 (Tenn. 1998) (citing *Wyatt v. A-Best, Co.* 910 S.W.2d 851, 855 (Tenn. 1995)); *Potts v. Celotex Corp.*, 796 S.W.2d 678, 681 (Tenn. 1990); *Foster v. Harris*, 633 S.W.2d 304, 305 (Tenn. 1982). As the Tennessee Supreme Court explained in *Wyatt*, "'it has always heretofore been accepted, as a sort of legal 'axiom,' that a statute of limitations does not begin to run against a cause of action before that cause of action exists, *i.e.*, before a judicial remedy is available to the plaintiff.'" *Wyatt*, 910 S.W.2d at 855 (quoting *Dincher v. Marlin Firearms Co.*, 198 F.2d 821, 823 (2d Cir. 1952) (Frank, J., dissenting)). Thus, for a tort action,[2] the statute of limitations commences when the plaintiff knew or should have known that "an actionable injury has occurred." *Id.* at 857. "An actionable injury is one caused by the breach of a legally recognized duty *and* one that results in legally cognizable damage." *Id.* In other words, "the accrual of the cause of action depends on when the plaintiff has suffered a legally cognizable injury." *Shell v. State*, 893 S.W.2d 416, 423 (Tenn. 1995). *Black's Law Dictionary* defines the term "cognizable" as "[c]apable of being known or recognized" or "[c]apable of being judicially tried or examined before a designated tribunal; within the court's jurisdiction." *Black's Law Dictionary* (10th ed. 2014). "'A cause of action accrues when a suit may be maintained upon it.'" *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 490 (Tenn. 1975) (quoting *Ford Motor Co. v. Moulton*, 511 S.W.2d 690, 697 (Tenn. 1974) (J. Fones, dissenting)).

The Tennessee Supreme Court's recent decision in *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 891 (Tenn. 2011), is particularly instructive. *Lind* involved a purchaser who filed a products liability suit against a seller in 2007. *Id.* In 2009, the purchaser again sued the seller, this time alleging strict liability. *Id.* The seller filed a motion to dismiss contending that the suit was barred by the statute of limitations. *Id.* The trial court denied the motion but granted an interlocutory appeal. *Id.* The case eventually made its way to the Tennessee Supreme Court. Under the Tennessee Products Liability Act, the seller of the product could not be held to strict liability in tort unless one or more statutory conditions was satisfied. *Id.* at 896. One of those conditions was if the manufacturer was judicially declared insolvent, which occurred in *Lind* after the 2007

---

[2]The United States Supreme Court has described a USERRA claim as "a federal tort" and applied principles of general tort law when construing USERRA. *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011).

lawsuit. *Id.* Still, the defendant contended that because the plaintiff-purchaser knew or should have known of the product defect when he originally filed suit in 2007, then the 2009 suit was time-barred. *Id.* The court disagreed. The supreme court explained that the Tennessee Products Liability Act governed those limited instances in which a seller could be sued in strict liability in tort, and in the absence of the specified circumstances, the plaintiff could not sue the seller in strict liability. *Id.* at 898-99. The court's discussion of the concept of accrual is helpful:

> [T]his Court, while observing that "the phrase 'cause of action' can, at times, be difficult to define," has held that "a common thread among the definitions ... is that a 'cause of action' is associated with a right of one party to sue another." *Shelby Cnty. Health Care Corp. v. Nationwide Mut. Ins. Co.*, 325 S.W.3d 88, 96 (Tenn. 2010) (citation omitted); *see also* 1 Am.Jur.2d *Actions* § 1 (2005) ("Although it has been said that the term 'cause of action' has different meanings in different contexts, a 'cause of action' generally is understood as a set of facts which gives rise to a right to seek a remedy."). Pursuant to Tennessee Code Annotated section 29-28-106(b) [of the Tennessee Products Liability Act], the right of a claimant to assert a claim for strict liability against a seller does not arise until the manufacturer has been judicially declared insolvent. . . . And while it is true that a tort claim is said to accrue "when the plaintiff knows, or in the exercise of reasonable care and diligence should know, that an injury has been sustained," *Wyatt v. A–Best, Co.*, 910 S.W.2d 851, 854 (Tenn. 1995), we cannot ignore the fact that, under the terms of the statute, a plaintiff does not have the right to sue a seller in strict liability until the manufacturer is judicially declared insolvent. It logically follows that the limitations period applicable to a cause of action does not begin until the cause of action itself accrues. See 18 Tenn. Jur. *Limitation of Actions* § 19 (2005) ("It is a general rule that the statute of limitations begins to run as soon as there is a right of action ...."); *id.* § 20 ("The statutes of limitations do not begin to run in favor of or against a party until the accrual of a right of action in favor of or against him."); *see also Vason v. Nickey*, 438 F.2d 242, 247 (6th Cir. 1971); *State ex rel. Cardin v. McClellan*, 113 Tenn. 616, 85 S.W. 267, 270 (1905) ("[N]o time runs to the plaintiff until he has the right to sue[. T]he statute of limitation[s] does not begin to run until that time[, as i]f the rule [were] otherwise, meritorious actions might be barred before the plaintiff had the right to bring his suit. This would work gross injustice."). . . . [I]t is our view that until the judicial declaration of insolvency is made, or until one of the other two exceptions contained in Tennessee Code Annotated section 29-28-106(b) is met, a claimant has no

8

cause of action against a seller in strict liability pursuant to section 29-28-106(b).

When the Plaintiff initially filed his suit in 2007, the truck's manufacturer, Chrysler, had not yet been judicially declared insolvent. The Plaintiff's cause of action in strict liability against the Defendant did not accrue until this declaration occurred. Because the Plaintiff "commenced" his suit against the Defendant by filing a complaint within one year of Chrysler's insolvency, see Tenn. R. Civ. P. 3, his strict liability claim against the Defendant was asserted in a timely manner.

*Lind*, 356 S.W.3d at 900-01 (footnotes omitted). In sum, the supreme court concluded that the plaintiff could proceed on his strict liability claim "because that cause of action did not accrue until the manufacturer was judicially declared insolvent." *Id.* at 891.

The Tennessee Supreme Court's decision in *Gibson v. Swanson Plating & Mach. of Kentucky, Inc.*, 819 S.W.2d 796, 796-98 (Tenn. 1991), is also useful. The question before the court was whether the one-year statute of limitations for a worker's compensation claim against the Second Injury Fund began to run on the date of the employee's injury or on the date of adjudication of a permanent partial disability award. *Id.* at 797. The defendant argued that the statute began to run once the employee knew or had reason to know that a compensable injury had been sustained. *Id.* The court disagreed, explaining:

[L]ogic would seem to dictate that an employee cannot be held to have knowledge of a claim against the Second Injury Fund until that claim actually arises—which in this case was not until the first permanent disability was adjudicated. Moreover, this logical proposition is consistent with our prior rulings on the accrual of a right of action. Tennessee law recognizes that, ordinarily, a statute of limitations begins to run when a plaintiff has a cause of action and can bring suit. *Armistead v. Clarksville–Montgomery Co. School System*, 222 Tenn. 486, 437 S.W.2d 527, 528-29 (1969); *Henwood v. McCallum & Robinson, Inc.*, 179 Tenn. 531, 167 S.W.2d 981, 982 (1943). Likewise, federal courts construing Tennessee law have held that a cause of action does not accrue until a suit can be maintained. *Hodge v. Service Machine Co.*, 438 F.2d 347, 349 (6th Cir.1971); *Collier v. Goessling*, 160 F. 604, 611 (6th Cir.1908), cert. den., 215 U.S. 596, 30 S.Ct. 399, 54 L.Ed. 342 (1909). . . .

Applying these authorities to the facts in this case, we conclude that

prior to entry of the initial judgment regarding the plaintiff's disability, no successful claim against the Fund was possible. Because an action against the Fund could not have been maintained, dismissal would have been appropriate on the ground of prematurity. The statute could not, therefore, begin to run before adjudication of a first injury.

*Id.* at 797-98.

We now turn to the facts of the case before us. As we noted in our first *Smith* opinion, USERRA "creates a private cause of action" in favor of a service-connected employee whom an employer has refused to rehire. *Smith I*, 387 S.W.3d at 574. However, for actions filed by individuals *against a state* as an employer, USERRA provides that "the action may be brought in a State court of competent jurisdiction *in accordance with the laws of the State*." 38 U.S.C. § 4323(b)(2). In other words, "for an individual to sustain an action against a state pursuant to USERRA, the action must be permitted by state law." *Smith I*, 387 S.W.3d at 574. Pursuant to the doctrine of sovereign immunity, "suit 'may not be brought against a governmental entity unless that governmental entity has consented to be sued.'" *Moreno v. City of Clarksville*, 479 S.W.3d 795, 809 (Tenn. 2015) (quoting *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997)). Because the Tennessee General Assembly had not expressly waived the state's sovereign immunity for claims under USERRA prior to the passage of Tennessee Code Annotated section 29-20-208, the Tennessee National Guard was immune from USERRA claims when Smith filed his original lawsuit, and it was, appropriately, dismissed for lack of subject matter jurisdiction. *Smith I*, 387 S.W. 3d at 576.

Now, Tennessee Code Annotated section 29-20-208 authorizes USERRA claims against the State of Tennessee and applies "to all claims against a governmental entity under [USERRA] accruing on or after [July 1, 2014]." 2014 Tenn. Pub. Acts 574, § 2. We agree with Smith that under the circumstances of this case, his USERRA claim against the Tennessee National Guard did not accrue until July 1, 2014. Until then, he had no cause of action and no right to sue. Smith had no judicial remedy against the Tennessee National Guard pursuant to USERRA prior to the passage of section 29-20-208. Because of sovereign immunity, the wrong he allegedly suffered was not legally cognizable, and he had no right to bring suit for redress. *Compare Windsor v. DeKalb Cnty. Bd. of Educ.*, No. M2007-00968-COA-R3-CV, 2008 WL 802465, at *5 (Tenn. Ct. App. Mar. 25, 2008) (stating that the Tennessee Tenured Teacher Act, like the Tennessee Governmental Tort Liability Act, "creates a right of action that did not otherwise exist" and provides "the right to sue"); *Pearson v. Vencor Nursing Ctr. Ltd. P'ship*, No.

W2003-02135-COA-R3-CV, 2004 WL 1606975, at *3 (Tenn. Ct. App. July 16, 2004) (explaining that the GTLA granted the plaintiff "the right to sue" the defendant governmental entity); *Williams v. Memphis Light, Gas & Water Div.*, 773 S.W.2d 522, 523 (Tenn. Ct. App. 1988) (recognizing that the GTLA "created a new liability" and "extend[ed] a new right to bring suit"); *Franklin v. State*, No. 02A01-9106-BC-00113, 1992 WL 97079, at *3 (Tenn. Ct. App. May 12, 1992) (concluding that a claimant had no "right to sue" the State in circuit court, rather than through the Tennessee Claims Administration Act, because "the right to bring an action does not exist" unless the Act's conditions precedent are strictly followed).

We respectfully disagree with the dissent's suggestion that our interpretation of the term "accruing" renders the phrase "on or after" meaningless. In our view, the public chapter provided the new statute's effective date and then specified that it would apply to "all claims against a governmental entity under [USERRA] accruing on or after [July 1, 2014." The dissent agrees that sovereign immunity is waived by section 29-20-208 to some degree, but we do not read "accruing on or after [July 1, 2014]" as a clear indication of the legislature's intent "to place some limit on its waiver of sovereign immunity," as the dissent does. The words chosen by the legislature do not necessarily provide a limitation on the reach of the statute.

The dissent effectively reads the public chapter as stating that the statute will apply only to events or incidents *occurring* on or after July 1, 2014. We see two problems with that assertion. First, the general assembly could have easily specified that the statute applied to "cases filed" after July 1, 2014, or some similar language, if that was its intention. Instead, the legislature chose to apply the statute to "claims against a governmental entity under [USERRA] *accruing*" either on or after its effective date. (emphasis added). Second, giving effect to the phrase "on or after July 1, 2014" in the way suggested by the dissent essentially strips "accruing" of its meaning. We are required to presume "that the General Assembly knows the 'state of the law.'" *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010) (quoting *Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 683 (Tenn. 2005). Thus, we are required to presume that the general assembly knew the Tennessee Supreme Court's definition of "accrual" when it enacted section 29-20-208 and we are, therefore, unwilling to hold that section 29-20-208 applies to "claims accruing under USERRA, *without reference to State law,* on or after July 1, 2014," as the dissent proposes. (Emphasis added).

In sum, Smith's cause of action accrued when he attained the right to sue pursuant to the judicial remedy created by Tennessee Code Annotated section 29-20-208. *See Compozit Constr. Corp. v. J.B. Gibbs & Son Constr. Co.*, No. M2006-00329-COA-R3-

CV, 2006 WL 3071242, at *2 (Tenn. Ct. App. Oct. 27, 2006) ("a cause of action in tort is non-existent until a judicial remedy is available to the plaintiff"). Consequently, we reverse the trial court's order granting the motion to dismiss filed by the Tennessee National Guard.

## V. CONCLUSION

For the aforementioned reasons, the decision of the circuit court is hereby reversed and remanded for further proceedings. Costs of this appeal are taxed to the appellee, the Tennessee National Guard.

_____
BRANDON O. GIBSON, JUDGE